**No. 26-40063**

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

NORA ALICIA AVILA-GUEL; LEONARDO BAEZ-LARA

Defendants-Appellants

_____

**On Appeal from**

United States District Court for the Southern District of Texas

No. 1:25-CR-138

_____

**BRIEF OF APPELLANTS LEONARDO BAEZ-LARA AND NORA ALICIA AVILA-GUEL**

---

**SUBMITTED BY**

Cesar de Leon
Law Firm of Cesar de Leon, PLLC
622 East St. Charles
Brownsville, TX 78520
Telephone: (956)551-1327
Facsimile: (956) 338-5897
Texas State Bar No. 24073774
Federal ID S.D.T.X No. 2202339

Jaime M. Diez
Jones & Crane
P.O. Box 3070
Brownsville, TX 78523
Telephone: (956) 544-3565
Fax: (956) 550-0006
Texas State Bar No. 00783966

Counsel for Defendants-Appellants

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made so that the Judges of this Honorable Court may evaluate possible disqualification or recusal.

1. The Honorable Fernando Rodriguez, Jr., United States District Judge.

2. The Honorable Ignacio Torteya III, United States Magistrate Judge.

3. Leonardo Baez-Lara, Defendant-Appellant.

4. Nora Alicia Avila-Guel, Defendant-Appellant.

5. United States of America, Plaintiff-Appellee.

6. Counsel for Plaintiff-Appellee: Nicholas J. Ganjei, United States Attorney; Paul Marius Marian (in District Court) and Baltazar Salazar (in District Court); and Carmen Castillo Mitchell (on Appeal), Assistant United States Attorneys.

7. Counsel for Defendant-Appellant Avila-Guel: Cesar de Leon and Jaime Diez (in District Court and on Appeal).

8. Counsel for Defendant-Appellant Baez-Lara: Sergio Luis Villarreal (in District Court), Cesar de Leon, and Jaime Diez (on Appeal)

/s/ Cesar de Leon
Cesar de Leon
Counsel of Record for Appellants

i

**STATEMENT REGARDING ORAL ARGUMENT**

Appellants respectfully request oral argument under Federal Rule of Appellate Procedure 34(a)(2). This appeal is not frivolous. It presents recurring questions of statutory construction and constitutional law that extend beyond this prosecution. The Court must decide whether 8 U.S.C. § 1324(a)(1)(A)(iii) reaches the open provision of shelter and employment absent any proof of concealment, shielding from detection, or other covert conduct. It must also determine the constitutional limits on the Government's ability to substitute deposition testimony for live witnesses after removing those witnesses from the country and then proceeding to trial on a theory that was never the subject of meaningful cross-examination. Because these issues affect the proper interpretation of 8 U.S.C. § 1324(a)(1)(A)(iii) and the administration of the Confrontation Clause, oral argument would significantly aid the decisional process in this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ...................................................... i

STATEMENT REGARDING ORAL ARGUMENT ................................................ ii

TABLE OF CONTENTS.................................................................................... iii

TABLE OF AUTHORITIES .............................................................................v

    Cases.........................................................................................................v

    Statutes ...................................................................................................vi

    Rules and Other Authorities................................................................. vii

JURISDICTIONAL STATEMENT ................................................................ viii

STATEMENT OF THE ISSUES....................................................................... ix

STATEMENT OF THE CASE............................................................................1

    A.    The Indictment. ................................................................................1

    B.    The Material Witnesses Are Deposed and Then Removed From the Country.............................................................................................................1

    C.    The Government Elects To Proceed on Harboring Only. ...........................2

    D.    Trial, Rule 29, and Verdict. ...............................................................3

SUMMARY OF THE ARGUMENT ........................................................................6

STANDARD OF REVIEW ...............................................................................9

ARGUMENT ...............................................................................................10

I.      The evidence was insufficient because § 1324(a)(1)(A)(iii) requires conduct involving concealment, shielding from detection, or comparable covert conduct. ..................................................................................10

    A.      This Court has consistently construed § 1324(a)(1)(A)(iii) to require concealment, shielding from detection, or comparable covert conduct. .........10

    B.      The statutory text confirms this Court's construction of § 1324(a)(1)(A)(iii). ..................................................................................16

    C.      Toure addressed the jury charge, not the meaning of harboring. ...........20

    D.      The majority of courts of appeals require concealment or comparable covert conduct, and the minority view cannot be reconciled with the text of § 1324(a)(1)(A)(iii). ..................................................................................23

    E.      The Government failed to prove concealment, shielding from detection, or comparable covert conduct. ....................................................................27

II.     The admission of the videotaped depositions of the two removed material witnesses violated the Confrontation Clause. ......................................................29

    A.      This Court reviews Appellants' Confrontation Clause challenge de novo ..................................................................................................30

    B.      Crawford requires two independent predicates, and the Government bears the burden of proving both. ..................................................................30

    C.      The Government failed to establish constitutional unavailability. .........31

    D.      The Rule 15 depositions did not provide the meaningful opportunity for confrontation that the Sixth Amendment requires. ...........................................33

    E. The Confrontation Clause violation was not harmless. ...........................34

CONCLUSION ..............................................................................................36

CERTIFICATE OF SERVICE ......................................................................37

CERTIFICATE OF COMPLIANCE .............................................................37

# TABLE OF AUTHORITIES

## Cases

*Aguilar-Ayala v. Ruiz*, 973 F.2d 411 (5th Cir. 1992) ........................................31, 32

*Barber v. Page*, 390 U.S. 719 (1968) ................................................................30, 31

*Chapman v. California*, 386 U.S. 18 (1967)......................................................35, 36

*Crawford v. Washington*, 541 U.S. 36 (2004) .................................................. passim

*Cruz v. Abbott*, 849 F.3d 594 (5th Cir. 2017) .................................................. passim

*Fischer v. United States*, 603 U.S. 480 (2024) ................................................. passim

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)..........................................................16

*Jackson v. Virginia*, 443 U.S. 307 (1979)..........................................................9, 10

*Johnson v. United States*, 576 U.S. 591 (2015) ......................................................15

*Lilly v. Virginia*, 527 U.S. 116 (1999) ...............................................................9, 30

*Morissette v. United States*, 342 U.S. 246 (1952)....................................................19

*Musacchio v. United States*, 577 U.S. 237 (2016).............................................10, 29

*United States v. Alvarado-Valdez*, 521 F.3d 337 (5th Cir. 2008).................. 9, 30, 35

*United States v. Anderton*, 901 F.3d 278 (5th Cir. 2018) ...........................14, 15, 28

*United States v. Bass*, 404 U.S. 336 (1971)....................................................19, 20, 27

*United States v. Bourrage*, 138 F.4th 327 (5th Cir. 2025)........................................9

*United States v. Buluc*, 930 F.3d 383 (5th Cir. 2019)..............................................30

*United States v. Cantu*, 557 F.2d 1173 (5th Cir. 1977) ...........................................11

*United States v. Calderon-Lopez*, 268 F. Appx. 279 (5th Cir. 2008)................33, 34

*United States v. Costello*, 666 F.3d 1040 (7th Cir. 2012).........................................24

*United States v. Cuevas-Reyes*, 572 F.3d 119 (3d Cir. 2009)...................................24

*United States v. De Jesus-Batres*, 410 F.3d 154 (5th Cir. 2005)........................14, 24

*United States v. Dominguez*, 661 F.3d 1051 (11th Cir. 2011).................................25

*United States v. Foster*, 753 F. Appx. 307 (5th Cir. 2018).....................................31

*United States v. Gaspar-Felipe*, 4 F.4th 330 (5th Cir. 2021) .......................30, 31, 32

*United States v. Hansen*, 599 U.S. 762 (2023) .............................................18, 19

*United States v. Kim*, 193 F.3d 567 (2d Cir. 1999) ................................................24

*United States v. Ozcelik*, 527 F.3d 88 (3d Cir. 2008) ............................................24

*United States v. Rubio-Gonzalez*, 674 F.2d 1067 (5th Cir. 1982) ....................13, 23

*United States v. Shum*, 496 F.3d 390 (5th Cir. 2007) ...................................... 14, 28

*United States v. Tipton*, 518 F.3d 591 (8th Cir. 2008)....................................25, 26

*United States v. Tirado-Tirado*, 563 F.3d 117 (5th Cir. 2009)........................ passim

*United States v. Toure*, 965 F.3d 393 (5th Cir. 2020) ..........................20, 21, 22, 23

*United States v. Tydingco*, 909 F.3d 297 (9th Cir. 2018) .......................................25

*United States v. Vargas-Cordon*, 733 F.3d 366 (2d Cir. 2013).............................23

*United States v. Varkonyi*, 645 F.2d 453 (5th Cir. 1981) ............................... passim

*United States v. Williams*, 553 U.S. 285 (2008) ..................................................16

*United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76 (1820)...................................20

*United States v. Zheng*, 87 F.4th 336 (6th Cir. 2023).............................................26

*Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524 (5th Cir.
    2013) (en banc) ................................................................................ passim

*Williams v. Taylor*, 529 U.S. 362 (2000) ............................................................16

*Wooden v. United States*, 595 U.S. 360 (2022) .............................................20, 27

## Statutes

8 U.S.C. § 1324(a)(1)(A)(iii) ............................................................... passim

8 U.S.C. § 1324(a)(1)(A)(iv) ...................................................................15, 18

8 U.S.C. § 1324(a)(1)(A)(v)(I) .................................................................1, 15

8 U.S.C. § 1324(a)(1)(B)(i) ............................................................................1

18 U.S.C. § 3144 ...................................................................................32, 33

18 U.S.C. § 3231 ...................................................................................... viii

28 U.S.C. § 1291 ...................................................................................... viii

**Rules and Other Authorities**

Fed. R. App. P. 4(b) .................................................................................. viii

Fed. R. App. P. 32 ........................................................................................37

Fed. R. App. P. 34(a)(2) ................................................................................ ii

Fed. R. Crim. P. 15................................................................................ passim

Fed. R. Crim. P. 29.........................................................................3, 4, 5, 9

Fed. R. Evid. 804(b)(1) .................................................................................2

Fifth Circuit Pattern Jury Instruction (Criminal) 2.01C (2024 ed.)....................22, 23

U.S. Const. amend. VI ......................................................................... passim

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 18 U.S.C. § 3231 because Appellants were charged with offenses against the laws of the United States. The jury returned guilty verdicts on all counts on August 13, 2025. [1] The district court entered final judgment as to each Appellant following sentencing. [2] Appellants timely filed notices of appeal under Federal Rule of Appellate Procedure 4(b).[3] This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] ROA. 1370-1372.
[2] ROA. 1374.
[3] ROA. 574, 588, 2659, 2660-2670.

## STATEMENT OF THE ISSUES

1. Whether the evidence was sufficient to sustain Appellants' convictions for harboring under 8 U.S.C. § 1324(a)(1)(A)(iii), where the Government's own evidence established that the aliens lived openly in plain sight, came and went freely, were never hidden, concealed, instructed to evade immigration authorities, or furnished fraudulent documents, the Government disclaimed any theory of concealment or shielding from detection, and instead argued that employment and housing alone constituted harboring.

2. Whether admitting the videotaped depositions of the only two occurrence witnesses violated the Sixth Amendment's Confrontation Clause, where the Government deposed the witnesses, secured their release, and facilitated their removal to Mexico, and then, once the witnesses could no longer be confronted, abandoned concealment as the factual theory by which it had sought to prove harboring, leaving Appellants no meaningful opportunity to cross examine them on the theory that ultimately produced the conviction.

## STATEMENT OF THE CASE

### A.    The Indictment.

On March 4, 2025, a grand jury returned a three-count indictment against Appellants Leonardo Baez-Lara and Nora Alicia Avila-Guel, the owners of Abby's Bakery in Brownsville, Texas. ROA. 42-44, 2127-2129 (Indictment). Count One charged a conspiracy under 8 U.S.C. § 1324(a)(1)(A)(v)(I) whose object was "to conceal, harbor and shield from detection." Counts Two and Three charged substantive violations of 8 U.S.C. § 1324(a)(1)(A)(iii) as to Roberto Ibarra-Otero and Gerardo Sanchez-Martinez, each alleging that Appellants "did conceal, harbor, and shield and attempt to conceal, harbor and shield from detection such alien," for commercial advantage and private financial gain. ROA. 42-44, 2127-2129. (Indictment). The grand jury thus charged all three statutory verbs in the conjunctive.

### B.    The Material Witnesses Are Deposed and Then Removed From the Country.

The Government detained Ibarra-Otero and Sanchez-Martinez as material witnesses and took their videotaped depositions under Federal Rule of Criminal Procedure 15, Sanchez-Martinez on March 31, 2025, and Ibarra-Otero on April 7, 2025. Defense counsel cross-examined both. ROA. 2462-2480, 2481-2490 (Depo Transcript for Material Witness Gerardo Sanchez-Martinez and Roberto Ibarra-Otero). On April 9, 2025, the magistrate judge ordered the witnesses released, and

they were removed to Mexico. ROA. 106, 2186 (Order on Release Material Witnesses).

The depositions established that the witnesses were not hidden or shielded from detection. Both witnesses testified that they lived in plain sight along a public road, came and went freely, were not brought here by Appellants, were never instructed to avoid immigration authorities, and were never furnished fraudulent documents.  ROA. 1558, 1566, 1569-1570 (Sanchez-Martinez Depo.); ROA. 1481, 1489, 1490, 1491 (Ibarra-Otero Depo.)

**C.     The Government Elects To Proceed on Harboring Only.**

Before trial, the Government moved to declare the two witnesses unavailable and to admit their depositions in lieu of live testimony. ROA. 288-297.  Appellants were opposed, arguing that the Government had removed the witnesses and failed to make objectively reasonable efforts to secure their return, in violation of the Confrontation Clause and Federal Rule of Evidence 804(b)(1). ROA. 329-332 (Response in opposition to declare witnesses unavailable). At the June 26, 2025, final pretrial conference, the district court found both witnesses unavailable and ruled the depositions admissible. ROA. 767-775.

At the same pretrial conference, the Government expressly narrowed the theory on which it intended to proceed. ROA. 775.  In response to the district court's inquiry whether the Government was proceeding on the theory that Appellants

"harbored the alien within the United States," the prosecutor replied, "Correct, Your Honor. Only harboring." ROA. 776.  The Government further represented: "We're not indicating that there was any concealment or shielding in this action. Here, it's just harboring." ROA. 786. The district court understood the Government to be abandoning any theory of concealment or shielding from detection, observing that the Government would not "focus on or . . . argue conceal or shielded from detection." ROA. 787.

Appellants objected that harboring itself required concealment, covertness, or shielding from detection, and argued that proceeding on harboring alone while broadening its definition to exclude any covertness requirement constructively amended the indictment. ROA. 788-791, 353-361 (104(a) Motion to define elements of 8 USC §1324). The district court rejected that position, denied Appellants' motion to define the elements of § 1324(a)(1)(A)(iii), and expressly stated that the issue was preserved. ROA. 792-793.

**D.    Trial, Rule 29, and Verdict.**

The trial was held from August 11 through August 13, 2025. The district court entered a standing ruling that objections, once made, were preserved without the need for renewal. ROA. 901-902.

The Government presented four law enforcement witnesses and two videotaped depositions of material witnesses. Before the depositions were played to

3

the jury, Appellants renewed their Confrontation Clause objection, which the district court overruled. ROA. 1266. The Government then played both depositions before resting its case. ROA. 1267-1275.

The Government's agents conceded the central facts. Agent Dillon Duke agreed that "providing housing is simply a form of shelter," ROA. 1251; that the witnesses were "not concealed while walking out in public," ROA. 1254; and that one witness "was not hidden." ROA. 1249. Agent German Garcilazo agreed the bakery was "open to the public," ROA. 1126; and that "there's really no one hiding." ROA. 1126. Agent Juan C. Alvarado agreed the witness "wasn't being concealed" ROA. 1139, 1203; and "had the liberty to come and go as he pleased." ROA. 1203; and that the witnesses used no "secret passageway" ROA. 1175. Agent Cassandra Clarke agreed that no one was "being concealed" ROA. 1203-1204; or had fraudulent documents. ROA. 1205.

At the close of the Government's case, Appellants moved for judgments of acquittal under Rule 29. ROA. 1276. The district court denied the motion as to Counts Two and Three ROA. 1280. and took Count One under advisement. ROA. 1279. The following morning, the court denied the Rule 29 motion as to Count One. ROA. 1313.

The jury was instructed that "the mere act of providing shelter to an alien is not, alone, sufficient" to establish harboring and that "substantially facilitate" means

4

to make an alien's presence "substantially easier or less difficult." ROA. 1328. As to the substantive harboring counts, the operative second element required only that "the defendant harbored or attempted to harbor the alien within the United States." ROA. 1328, 1340.

During the closing argument, the Government told the jury that this case involved "shelter plus something else," and that the "something else" was "[e]mployment. That's what makes it harboring." ROA. 1362. The Government then expressly acknowledged that concealment was absent, arguing: "both counsel state, well, they weren't hidden or concealed. That is not a requirement we have to prove. They don't have to be hidden or concealed." ROA. 1362.

The jury found both Appellants guilty on all counts and further found that the offenses were committed for commercial advantage or private financial gain. ROA. 1370-1372. Following the verdict, Appellants renewed their Rule 29 motions, preserving their challenge to the sufficiency of the evidence. ROA. 513-526, 2594-2607.  This appeal followed.

**SUMMARY OF THE ARGUMENT**

This appeal concerns the proper scope of the federal harboring statute, 8 U.S.C. § 1324(a)(1)(A)(iii), and the constitutional limits on the Government's substitution of deposition testimony for live witnesses. The Government indicted Appellants for concealing, harboring and shielding from detection two bakery employees. It then expressly abandoned any theory of concealment, telling the district court that it was "not indicating that there was any concealment or shielding in this action." ROA. 776-787. Instead, it obtained convictions on the theory that openly employing the workers and allowing them to live rent-free in a suite adjacent to the bakery constituted harboring. This appeal asks whether Congress criminalized that conduct under § 1324(a)(1)(A)(iii) and whether the Constitution permitted the Government to prove its case through depositions after changing the factual basis on which it sought conviction.

First, the evidence was insufficient as a matter of law. Section 1324(a)(1)(A)(iii) reaches conduct involving concealment, shielding from detection, or comparable covert conduct. It does not criminalize the open provision of employment or housing. That construction follows from this Court's decisions, the statutory text, settled principles of statutory interpretation, the rule of lenity, and the better reasoned decisions of the courts of appeals. The Government's own evidence established that the employees lived openly, worked openly, came and went freely,

6

and were never hidden, instructed to avoid law enforcement, or furnished false documents. Because the Government proved only open employment and housing, no rational juror could find the harboring element beyond a reasonable doubt. The convictions therefore must be reversed and judgments of acquittal rendered.

Second, the admission of the Rule 15 depositions violated the Confrontation Clause for two independent reasons. The Government failed to establish constitutional unavailability after securing the witnesses' release and facilitating their removal from the United States without taking the objectively reasonable measures necessary to secure their return for trial. Even assuming the witnesses were constitutionally unavailable, Appellants never received the meaningful opportunity for cross-examination the Sixth Amendment guarantees. Defense counsel questioned the witnesses concerning the indictment's theory that Appellants concealed, harbored, and shielded them from detection. Only after the witnesses had been removed from the country and could no longer be recalled did the Government abandon concealment as the factual basis on which it sought to satisfy the harboring element and argue instead that employment itself transformed otherwise open housing into harboring. The Constitution does not permit the Government to change the factual basis of its prosecution after confrontation has become impossible. Because the depositions supplied the only firsthand testimony concerning the charged offenses, the constitutional error was not harmless.

The Court need not reach both issues. If it concludes that the evidence was insufficient under § 1324(a)(1)(A)(iii), it should reverse and render judgments of acquittal. If it reaches the Confrontation Clause issue, either independent constitutional violation requires that the convictions be vacated and the case remanded for a new trial.

**STANDARD OF REVIEW**

The sufficiency of the evidence is reviewed *de novo*, asking whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *See United States v. Bourrage*, 138 F.4th 327, 348 (5th Cir. 2025); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The meaning of a criminal statute is likewise a question of law reviewed *de novo*. Whether the admission of testimonial evidence violated the Confrontation Clause is a constitutional question reviewed *de novo*. *United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008); *see Lilly v. Virginia*, 527 U.S. 116, 136-37 (1999) (plurality opinion). A preserved Confrontation error requires reversal unless the Government proves it harmless beyond a reasonable doubt. *Alvarado-Valdez*, 521 F.3d at 341. Each issue was preserved.  Appellants preserved the sufficiency and statutory-construction claims through their pretrial motion and Rule 29 motions. ROA. 513-526, 2594-2607 (Rule 29). ROA. 788-791, 353-361 (104(a) Motion to define elements of 8 USC §1324). Appellants preserved the Confrontation Clause objection by pretrial motion and renewed it at trial. ROA. 329-332 (Motion in opposition for witnesses to be deemed unavailable). ROA. 1266.

## ARGUMENT

**I.    The evidence was insufficient because § 1324(a)(1)(A)(iii) requires conduct involving concealment, shielding from detection, or comparable covert conduct.**

Section 1324(a)(1)(A)(iii) does not criminalize every act that makes an undocumented person's continued presence in the United States easier. Rather, this Court has construed the statute narrowly, explaining that "[i]mplicit in the wording 'harbor, shield, or conceal' is the connotation that something is being hidden from detection." *United States v. Varkonyi*, 645 F.2d 453, 456 (5th Cir. 1981); *Cruz v. Abbott*, 849 F.3d 594, 599 (5th Cir. 2017); *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 529–31 (5th Cir. 2013) (en banc) (plurality op.).

Because the Government expressly disclaimed concealment and proved only open employment and housing, no rational juror could find that essential harboring element beyond a reasonable doubt. In reviewing the sufficiency of the evidence, this Court measures the Government's proof against the statutory elements of the offense, as properly construed, rather than the wording of the jury instructions. *See Musacchio v. United States*, 577 U.S. 237, 243 (2016); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

**A.    This Court has consistently construed § 1324(a)(1)(A)(iii) to require concealment, shielding from detection, or comparable covert conduct.**

This Court has long recognized that harboring under § 1324(a)(1)(A)(iii) requires more than providing shelter or employment. In *United States v. Varkonyi*,

10

the Court recognized that harboring requires conduct that goes "beyond mere employment," and explained that the statutory phrase "harbor, shield, or conceal" implies "that something is being hidden from detection." 645 F.2d 453, 456, 459 (5th Cir. 1981). This Court has long enforced the statute as a prohibition on hiding aliens from the authorities. *See United States v. Cantu*, 557 F.2d 1173 (5th Cir. 1977) (affirming convictions for shielding illegal aliens from detection).

In *Villas at Parkside Partners*, the opinion read § 1324 the same way, explaining that the harboring provision requires that a person "shield the renter's presence from detection," and that the mere renting of an apartment to an unlawfully present alien, conduct that "does not have the effect of evading federal detection," falls outside it. 726 F.3d 524, 530–31 (5th Cir. 2013) (en banc) (Higginson, J., joined by Stewart, C.J., and Davis, Southwick, and Haynes, JJ.).

This Court's later decision in *Cruz v. Abbott* reinforces that understanding. *Cruz* was a constitutional challenge to a Texas statute criminalizing the harboring of aliens, but this Court never reached the preemption and Fourteenth Amendment questions the plaintiffs raised. It dismissed for lack of standing and expressly declined to reach those merits. *Cruz v. Abbott*, 849 F.3d 594, 598 & n.4 (5th Cir. 2017). The standing inquiry collapsed into a single question of statutory construction: whether plaintiffs who openly rented to or sheltered aliens faced a credible threat of prosecution. *Id*. at 599. Because the Texas Legislature had modeled

11

its provision on 8 U.S.C. § 1324(a)(1)(A)(iii) and borrowed its "from detection" language, the Court construed that shared formulation. Beginning "with the plain meaning of the statutory text," the Court explained:

> It is obvious from the structure that "harboring" and "from detection" must be read together. As used in the statute, "harboring" is a transitive verb[;] it requires an object, and its object is "that person." The phrase "from detection" modifies "that person." Therefore, "from detection" modifies and is an element of the offense of "harboring that person." Although the definition of "harbor" may be ambiguous in isolation, when paired with "from detection" it requires some level of covertness well beyond merely renting or providing a place to live.

*Id*. at 599.

The Court left no doubt that it was construing the federal statute, not merely its Texas analogue. In footnote 11 it explained that, whatever the placement of "from detection" in § 1324, "we read the federal statute as a prohibition on hiding aliens from authorities rather than as a prohibition against housing them." *Id*. at 600 n.11. That construction drove the disposition. Because the plaintiffs openly provided housing and social services and took no step to help the aliens evade detection, no reasonable reading of the harboring language reached their conduct, they faced no credible threat of prosecution, and they therefore lacked standing. *Id.* at 602.

To the extent the Government dismisses *Cruz*'s reading of § 1324 as dictum, the label changes nothing. *Cruz* did not announce a new construction; it applied this Court's settled one, relying on *Varkonyi* and the en banc decision in *Villas at*

12

*Parkside*, both of which construe § 1324 itself. *Cruz*, 849 F.3d at 600 & n.12. The covertness requirement thus rests on binding authority regardless of how *Cruz* is characterized, and *Cruz* confirms that this Court has already applied that requirement to reject the very theory the Government tried below: that openly housing or employing an alien, without more, is harboring.

*United States v. Rubio-Gonzalez* is consistent with that understanding. There, this Court explained that § 1324 creates a single offense that may be committed through several statutory means, while emphasizing that Congress intended to proscribe only conduct falling "fairly within" the statutory terms "harbor," "conceal," or "shield from detection." 674 F.2d 1067, 1073 & n.5 (5th Cir. 1982). The defendant in this case warned unlawfully present aliens that immigration officers had arrived, enabling them to evade apprehension. That conduct plainly constituted shielding from detection. *Id.* at 1072–73. *Rubio-Gonzalez*, therefore, did not expand the meaning of harboring. It confirmed that liability must rest on conduct falling within the statutory language Congress enacted. Additionally, *Rubio-Gonzalez* is distinguishable from this case because the indictment there pleaded all three statutory terms in the conjunctive, and the case was tried on that theory. *Id.* at 1073.

This Court's articulation of the harboring elements is consistent with that requirement. To obtain a conviction, the Government must prove, among other things, that the defendant's conduct "tended to substantially facilitate the alien

13

remaining in the United States illegally." *United States v. Shum*, 496 F.3d 390, 391-92 (5th Cir. 2007) (quoting *United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005)). But facilitation is necessary, not sufficient.  In *Shum*, the defendant not only provided employment, he also furnished false identification cards, failed to file Social Security paperwork, and took steps to shield the aliens' identities from government detection. *Id*. at 392–93. The court therefore concluded that the evidence established both substantial facilitation and concealment. *Id*. at 392. Here, by contrast, the Government expressly disclaimed concealment and proved only open employment and housing. *Varkonyi* and *Cruz* make clear that the facilitating conduct must also be covert, directed at preventing authorities from detecting the alien's unlawful presence. Reading the facilitation prong in isolation, as though any assistance that eases an alien's presence were enough, it cannot be squared with this Court's repeated insistence that the statutory terms imply "that something is being hidden from detection." *Varkonyi*, 645 F.2d at 456.

Far from supporting the Government's expansive reading of § 1324(a)(1)(A)(iii), *United States v. Anderton* confirms that this Court has long construed the harboring statute to reach concealment, not mere employment or housing. Although *Anderton* arose under the encouraging and inducing provisions of § 1324(a)(1)(A)(iv) and (v), rather than the harboring provision at issue here, its discussion of § 1324 reinforces that distinction. In rejecting a vagueness challenge,

14

the Court began with Justice Scalia's observation that due process forbids criminal laws "so vague that [they fail] to give ordinary people fair notice of the conduct [they punish], or so standardless that [they invite] arbitrary enforcement." *United States v. Anderton*, 901 F.3d 278, 283 (5th Cir. 2018) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). The Court then recognized that, under the harboring provision, "mere employment" and "mere renting" do not violate § 1324(a)(1)(A)(iii), citing *United States v. Varkonyi*, 645 F.2d 453, 459 (5th Cir. 1981), and *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 529–30 (5th Cir. 2013) (en banc). *Anderton*, 901 F.3d at 284. It distinguished those cases only because *Anderton* was prosecuted under a different subsection. *Id.* In affirming the sufficiency of the evidence, the Court likewise emphasized that the convictions rested on conduct that went "well beyond" mere employment, including knowingly providing inducements and encouragements for the workers to remain in the United States. *Id.* at 285. Here, by contrast, the Government expressly disclaimed concealment and proved only open employment and housing, conduct this Court has repeatedly held does not establish harboring under § 1324(a)(1)(A)(iii).

The limiting principle is therefore clear. Harboring under § 1324(a)(1)(A)(iii) requires conduct involving concealment, shielding from detection, or comparable covert conduct directed toward preventing authorities from discovering an alien's unlawful presence. Open employment and open housing lack that essential

15

characteristic. That is the construction this Court has consistently applied from *Varkonyi* through *Cruz*, and nothing in its subsequent decisions has altered it.

## B.   The statutory text confirms this Court's construction of § 1324(a)(1)(A)(iii).

The statutory text confirms that settled construction. Section 1324(a)(1)(A)(iii) makes it a crime to "conceal[], harbor[], or shield[] from detection" an alien unlawfully present in the United States. 8 U.S.C. § 1324(a)(1)(A)(iii). Congress chose three related verbs, not one, and the established canons of construction require that they be read together, each informing the others and none swallowing the rest. A court must "give effect, if possible, to every clause and word of [the] statute." *Fischer v. United States*, 603 U.S. 480, 486 (2024) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)).

Two familiar canons make the point clear. Under *noscitur a sociis*, a statutory word is "given more precise content by the neighboring words with which it is associated," so that no term is assigned "a meaning so broad that it is inconsistent with" "the company it keeps." *Id.* at 487 (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008), and *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). Likewise, *ejusdem generis* recognizes that a general term should not be read so broadly that it renders its neighboring terms superfluous. *Id.* Both canons reflect the common-sense principle that Congress ordinarily does not use broad language that renders the accompanying specific terms meaningless. *Id.*

16

Applying those principles, *Fischer* rejected an interpretation that allowed a broad statutory term to swallow the more specific language surrounding it. *Id.* at 490. Reading the broad term to encompass all conduct, the Court explained, would have left "scant reason for Congress to provide any specific examples at all," allowing the broader clause to consume the narrower one and leaving it "with no work to do." *Id.* That approach, the Court explained, gets the analysis "exactly backwards," because it expands the specific terms through the broader language that follows them rather than allowing the specific terms to define and limit the broader language. *Id.* The Court refused to transform a focused criminal statute into a "one size fits all" prohibition, emphasizing that defining crimes and prescribing punishment is the Legislature's role, not the judiciary's. *Id.* at 497.

Although *Fischer* did not construe § 1324, it confirms the textual principles on which this Court's construction already rests. Long before *Fischer*, this Court interpreted § 1324 the same way. *United States v. Varkonyi* held that the phrase "harbor, shield, or conceal" implies "that something is being hidden from detection." 645 F.2d 453, 456 (5th Cir. 1981). The *en banc* court's lead opinion reaffirmed that understanding in *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 530–31 (5th Cir. 2013), and *Cruz v. Abbott* explained that because "harboring" appears alongside "from detection," the statute "requires some level of covertness well beyond merely renting or providing a place to live." 849 F.3d 594, 599 (5th Cir.

17

2017). Those decisions apply the same textual principle embraced in *Fischer*: the surrounding terms define and limit one another.

If "harboring" reaches any conduct that facilitates an alien's continued presence, including open employment or open housing, then "conceal" and "shield from detection" perform little independent work. Congress would have had little reason to include those terms at all because "harbor" would swallow them, leaving them with "no work to do." *See Fischer*, 603 U.S. at 490. The better reading, and the one this Court has consistently adopted, is that the three verbs describe different forms of the same kind of conduct: concealing an unlawfully present alien, shielding the alien from detection, or otherwise providing covert assistance that prevents the Government from discovering the alien's unlawful presence.

The Supreme Court recently applied the same interpretive principles to a neighboring provision of the same statute. In *United States v. Hansen*, the Court construed § 1324(a)(1)(A)(iv), which makes it a crime to "encourage[] or induce[]" an alien to come to, enter, or reside in the United States unlawfully. Rejecting the Government's broad reading, the Court held that "encourages or induces" carries a specialized criminal law meaning rather than its broad everyday meaning. *See United States v. Hansen*, 599 U.S. 762, 774–75 (2023). Because Congress used established criminal law terms of art in a criminal statute, the Court presumed that Congress adopted "the cluster of ideas" attached to those terms through centuries of

18

legal practice. *Id.* at 774 (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)). Context, the Court explained, determines which meaning applies because "the water in which they swim" showed that Congress employed the terms in their settled legal sense. *Id.* at 775. The Court likewise relied on the surrounding statutory language, explaining that neighboring words "clarified and narrowed" the meaning of "encourage" and "induce." *Id.* at 776–77.

The same reasoning applies here. Just as the Court refused to give "encourages or induces" their broadest ordinary meaning, "harbor" cannot be divorced from its statutory companions, "conceal" and "shield from detection." Read in context, those neighboring terms define and limit one another. The Government's interpretation would do exactly what *Hansen* refused to do: give a criminal law term its broadest everyday meaning while ignoring the statutory context that gives it its legal content.

Even if doubt remained after applying the ordinary tools of statutory construction, the rule of lenity would independently require reversal. "Ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *United States v. Bass*, 404 U.S. 336, 347 (1971). The rule of lenity is among the oldest principles of Anglo-American criminal law, grounded in two constitutional imperatives. First, it secures fair notice by ensuring that no person is punished for conduct Congress has not clearly made criminal. Second, it preserves the separation of powers by leaving the definition of crimes to the Legislature, not the Judiciary. *Bass*, 404 U.S. at 347–

19

48; *see also Wooden v. United States*, 595 U.S. 360, 388–91 (2022) (Gorsuch, J., concurring in the judgment). Chief Justice Marshall articulated the principle, explaining that a court may not extend a penal statute beyond its clear terms because "the power of punishment is vested in the legislative, not in the judicial department." *See United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820). The Supreme Court reaffirmed that same principle in *Fischer v. United States*, 603 U.S. 480, 497 (2024). Lenity therefore does not alter the conclusion compelled by the statutory text, structure, and precedent. It independently confirms it. Reading "harbor" to criminalize open employment and housing would expand criminal liability beyond anything Congress clearly enacted, precisely the result the rule of lenity forbids. Although the district court relied on *United States v. Toure*, 965 F.3d 393 (5th Cir. 2020), in concluding that the Fifth Circuit's pattern instruction was proper, *Toure* did not resolve the statutory question presented here. ROA. 778-790.

## C. **Toure addressed the jury charge, not the meaning of harboring.**

The Court's reliance on *United States v. Toure* stretched that decision well beyond what it actually held. *Toure* resolved only whether the district court abused its discretion by declining to give an additional jury instruction. It did not hold that concealment is unnecessary to prove harboring, nor did it decide whether open employment and housing, standing alone, satisfy § 1324(a)(1)(A)(iii). *See United States v. Toure*, 965 F.3d 393, 403 (5th Cir. 2020).

20

The June 26, 2025, pretrial hearing illustrates why this case differs from Toure. "Here, it's just harboring. We're not indicating that there was any concealment or shielding in this action." ROA. 786. The district court immediately agreed, stating, "Correct. Right. I mean, I think that's correct. That's my read of the law as well." ROA. 786-787. The court further recognized that the Government intended to prove only that Appellants "harbored" the workers and was "not going to focus on or... argue conceal or shielded from detection." ROA. 787.

Appellants consistently maintained that Fifth Circuit precedent requires more than open employment and housing because harboring carries an element of concealment or comparable covert conduct. Counsel explained that "there's always something additional... harboring has that aspect of covertness, it requires something more." ROA. 788. Counsel further argued that "all the cases we have, have that overt act," such as providing false documents, coaching workers to evade immigration authorities, or directing them to flee during an immigration raid, and that "we don't believe that overt act is present here." ROA. 789. Counsel likewise argued that every Fifth Circuit case involved "that affirmative step" to conceal undocumented workers from immigration authorities. ROA. 789.

The district court rejected that legal position and, critically, prohibited Appellants from presenting it to the jury. Although the court acknowledged that Appellants could argue the Government proved only shelter, it ruled: "I don't think it allows you

21

to argue 'and because they haven't proven shielded or concealed or hidden, because of that omission, you cannot reach a verdict of guilty." ROA. 788. The court later stated: "I probably will issue a Motion in Limine that will direct the parties, both sides, to not suggest, you know, make comments to the jury along the lines that the government must prove some form of concealment or shielding from detection." ROA. 791.  At the same time, the court expressly preserved the issue for appellate review, stating: "Thank you. I think the error is preserved." ROA. 792-793.

That procedural posture bears no resemblance to *Toure*. There, the Fifth Circuit reviewed only whether the district court abused its discretion by refusing a requested supplemental instruction after giving Pattern Jury Instruction 2.01C. 965 F.3d at 403. Here, by contrast, the district court accepted the Government's position that it needed to prove only "harboring," expressly allowed the Government to proceed without any concealment theory, and prohibited Appellants from arguing that the absence of concealment defeated the harboring element.

The question presented here is therefore one *Toure* never addressed: whether the Government's proof, after expressly disclaiming concealment and relying only on open employment and housing, was legally sufficient to establish harboring under § 1324(a)(1)(A)(iii). Nothing in *Toure* answered that question or displaced this Court's controlling decisions in *Varkonyi*, *Villas at Parkside*, *Cruz*, and *Rubio-Gonzalez*. Indeed, *Toure* itself emphasized that Pattern Jury Instruction 2.01C "closely

adhere[s] to this court's description of harboring in prior cases." *Toure*, 965 F.3d at 403. It therefore applied this Court's settled construction of § 1324. It did not expand it.

**D.     The majority of courts of appeals require concealment or comparable covert conduct, and the minority view cannot be reconciled with the text of § 1324(a)(1)(A)(iii).**

The decisions of other courts of appeals reinforce this Court's construction of 8 U.S.C. § 1324(a)(1)(A)(iii). Although the formulations differ, other courts of appeals likewise require conduct directed toward preventing an unlawfully present alien's detection, rather than the mere open provision of employment or shelter.

The Second Circuit likewise concluded that the statutory text requires a limiting construction. Looking to the phrase "conceals, harbors, or shields from detection," it held that placing "harbors" alongside terms carrying "an obvious connotation of secrecy and hiding" demonstrates that harboring "encompass[es] an element of concealment." *United States v. Vargas-Cordon*, 733 F.3d 366, 381–82 (2d Cir. 2013). It therefore held that harboring requires conduct intended both to facilitate an alien's remaining in the United States unlawfully and to prevent detection by immigration authorities, concluding that "[t]he mere act of providing shelter to an alien, when done without intention to help prevent the alien's detection by immigration authorities or police, is thus not an offense under §

23

1324(a)(1)(A)(iii)." *Id.* at 382 (quoting *United States v. Kim*, 193 F.3d 567, 574 (2d Cir. 1999)).

The Third Circuit likewise adopted a similar formulation, holding that harboring encompasses conduct tending both to facilitate an alien's remaining in the United States illegally and to prevent government authorities from detecting the alien's unlawful presence. *United States v. Ozcelik*, 527 F.3d 88, 99–100 (3d Cir. 2008) (quoting *United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005)). Reaffirming that rule in *United States v. Cuevas-Reyes*, the court reversed a harboring conviction because the Government failed to prove the type of affirmative conduct directed at avoiding detection that § 1324(a)(1)(A)(iii) requires. 572 F.3d 119, 122–25 (3d Cir. 2009).

The Seventh Circuit reached the same conclusion through ordinary principles of statutory construction. Rejecting the argument that "harbor" simply means providing housing, the court explained that "conceals, harbors, or shields from detection" is a series of related terms that must be read together, not in isolation. *See United States v. Costello*, 666 F.3d 1040, 1046–47 (7th Cir. 2012). Reading harboring to mean ordinary housing, the court reasoned, would carry § 1324 "far beyond" concealing or shielding from detection. *Id.* at 1046. Instead, it construed harboring to mean providing "a secure haven, a refuge, a place to stay in which the

24

authorities are unlikely to be seeking" the alien and reversed because openly allowing a boyfriend to live in one's home did not constitute harboring. *Id.* at 1050.

The Eleventh Circuit likewise requires proof that the defendant substantially facilitated an alien's avoiding detection. Applying that standard, it reversed the harboring convictions because taking aliens to an attorney to pursue asylum did not facilitate their escape from detection by immigration authorities. *See United States v. Dominguez*, 661 F.3d 1051, 1063 (11th Cir. 2011). Conduct that brings an alien to the Government's attention is the opposite of harboring.

The Ninth Circuit has adopted a broader construction, holding that "harbor" means "afford shelter to" without necessarily requiring conduct directed at preventing detection. *See United States v. Tydingco*, 909 F.3d 297, 302–03 (9th Cir. 2018). Even so, the Ninth Circuit reached that result by requiring proof that the defendant intended to violate the law, rather than by construing "harbor" alongside "conceals" and "shields from detection." *Id.* at 303–04. That approach differs from the interpretive methodology adopted in *Fischer* and by this Court in *Cruz*. *See Fischer v. United States*, 603 U.S. 480, 492–97 (2024); *Cruz v. Abbott*, 849 F.3d 594, 599–600 (5th Cir. 2017).

Nor does the Eighth Circuit's decision in *United States v. Tipton* support the Government's position. Although the court stated that harboring includes conduct substantially facilitating an alien's remaining in the United States illegally, the

25

defendants also maintained counterfeit immigration documents for the workers. 518 F.3d 591, 595 (8th Cir. 2008). *Tipton*, therefore, did not hold that the open provision of employment and housing, standing alone, constitutes harboring. Rather, the conduct there included affirmative acts of deception designed to facilitate the workers' unlawful presence.

The Sixth Circuit likewise does not support the Government's position. In *United States v. Zheng*, the issue was whether harboring requires a specific intent to prevent detection, not whether conduct lacking any detection-preventing character constitutes harboring. 87 F.4th 336, 341–45 (6th Cir. 2023). Indeed, the court approved an instruction requiring conduct tending both to facilitate an alien's unlawful presence and to prevent detection, and the facts involved workers living in a basement, paid only in cash, omitted from employment and tax records, and instructed not to leave the premises or make noise. *Id.* at 339–46. Nothing comparable occurred here.

Read together, the decisions of the courts of appeals reinforce this Court's construction of § 1324(a)(1)(A)(iii). Although they articulate the principle in different ways, they consistently distinguish harboring from the mere open provision of employment, housing, or other ordinary assistance. The contrary approach, by contrast, depends on assigning "harbor" an independent meaning divorced from its statutory companions, "conceals" and "shields from detection," precisely the

interpretive methodology the Supreme Court rejected in *Fischer* and this Court rejected in *Cruz*. *See Fischer v. United States*, 603 U.S. 480, 487–90 (2024); *Cruz v. Abbott*, 849 F.3d 594, 599 (5th Cir. 2017).

Even if the differing formulations among the circuits created genuine uncertainty about the statute's reach, that uncertainty would not expand criminal liability. It would narrow it. A criminal statute that reasonable courts have construed differently cannot be said to provide the clear notice necessary to impose punishment beyond its settled core. The rule of lenity therefore requires that any remaining ambiguity be resolved in favor of the narrower construction. *See United States v. Bass*, 404 U.S. 336, 347–48 (1971); *Wooden v. United States*, 595 U.S. 360, 388–91 (2022) (Gorsuch, J., concurring in the judgment); *supra* Part I.B. With the governing legal standard established, the remaining question is straightforward: whether the Government's evidence satisfied that standard.

### E.    The Government failed to prove concealment, shielding from detection, or comparable covert conduct.

Under the proper construction of 8 U.S.C. § 1324(a)(1)(A)(iii), the Government was required to prove conduct involving concealment, shielding from detection, or comparable covert conduct.

The Government expressly abandoned any theory of concealment or shielding before trial. It informed the district court that it was proceeding on "Only harboring." ROA. 776. It further acknowledged, "We're not indicating that there was any

27

concealment or shielding in this action. Here, it's just harboring." ROA. 786. Consistent with that position, it argued to the jury that harboring required "shelter plus something else," that the "something else" was "[e]mployment," and that "[t]hat's what makes it harboring." ROA. 1362.

The evidence mirrored the Government's concessions. Unlike the defendants in *Shum* and *Anderton*, Appellants engaged in none of the additional affirmative conduct this Court found sufficient to support liability beyond open employment and housing. The employees openly lived in a suite adjacent to the bakery, "in front of the plaza," and "in plain sight and out in the open." ROA. 1569 (Sanchez-Martinez Depo.); ROA. 1490 (Ibarra-Otero Depo.) They came and went freely, ran their own errands, worked openly in a bakery that was itself open to the public, and were never instructed to avoid immigration authorities. ROA. 1139, 1140, 1203 (Trial testimony day 1); 1249 (Trial testimony day 2). The investigating agents confirmed those facts, acknowledging that the bakery was open to the public, that "there's really no one hiding," that the employees "were not concealed," and that there were no false documents, secret passageways, or other efforts to hide the employees from law enforcement. ROA. 1126, 1139, 1174, 1175 (Trial testimony day 1); 1254 (Trial testimony day 2).

The Government cannot salvage the verdict by relying on the jury instructions. Whether the instructions correctly stated the law is a separate question.

A sufficiency challenge measures the evidence against the elements Congress enacted, not against an instruction that omits an element of the offense. *Musacchio v. United States*, 577 U.S. 237, 243–45 (2016). Because § 1324(a)(1)(A)(iii) requires proof of concealment, shielding from detection, or comparable covert conduct, the Government's evidence failed as a matter of law.

Viewing the evidence in the light most favorable to the verdict, no rational juror could find beyond a reasonable doubt that Appellants concealed the employees, shielded them from detection, or engaged in comparable covert conduct. The Government proved only the open provision of employment and shelter. That conduct falls outside § 1324(a)(1)(A)(iii), and the convictions therefore must be reversed and judgments of acquittal rendered.

## II.    The admission of the videotaped depositions of the two removed material witnesses violated the Confrontation Clause.

The Government proved its case through the videotaped Rule 15 depositions of the only two occurrence witnesses after securing their release and facilitating their return to Mexico. The Sixth Amendment did not permit that result. Although Rule 15 authorizes the preservation of testimony, it does not determine whether that testimony may substitute for live confrontation at trial. That question is governed by the Confrontation Clause, which permits the admission of testimonial statements only when the Government establishes both that the witness is constitutionally

unavailable despite good-faith, objectively reasonable efforts to secure the witness's presence at trial and that the accused previously had a meaningful opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Barber v. Page*, 390 U.S. 719, 724–25 (1968). Neither constitutional prerequisite was satisfied here.

**A.   This Court reviews Appellants' Confrontation Clause challenge de novo.**

Whether the admission of testimonial hearsay violated the Confrontation Clause is reviewed *de novo*. *United States v. Buluc*, 930 F.3d 383, 387 (5th Cir. 2019); *United States v. Gaspar-Felipe*, 4 F.4th 330, 336–37 (5th Cir. 2021) ("*Gaspar-Felipe* argues he was convicted in violation of the Confrontation Clause, a claim we review *de novo*."); *United States v. Tirado-Tirado*, 563 F.3d 117, 122 (5th Cir. 2009); *United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008). Although the district court admitted the Rule 15 depositions, whether the Sixth Amendment permitted their admission presents a constitutional question this Court reviews without deference. *See Lilly v. Virginia*, 527 U.S. 116, 136–37 (1999) (plurality opinion).

**B.   Crawford requires two independent predicates, and the Government bears the burden of proving both.**

The Confrontation Clause permits the admission of testimonial hearsay only if the Government establishes two independent constitutional predicates: first, that

the witness is unavailable despite the Government's good faith, objectively reasonable efforts to secure the witness's presence at trial; and second, that the accused had a prior opportunity for meaningful cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 53–54, 59 (2004); *Barber v. Page*, 390 U.S. 719, 724–25 (1968). The Government bears the burden of proving both. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 418 (5th Cir. 1992); *United States v. Foster*, 753 F. Appx. 307, 313 (5th Cir. 2018) (per curiam); *Gaspar-Felipe*, 4 F.4th at 337–38 ("The prosecution bears the burden of establishing that a witness is unavailable.")

The Government satisfied neither requirement. It failed to make the objectively reasonable efforts necessary to establish constitutional unavailability, and the Rule 15 depositions did not provide the meaningful opportunity for cross-examination the Sixth Amendment requires. The first question is whether the Government established constitutional unavailability. It did not.

## C.   The Government failed to establish constitutional unavailability.

A witness is not constitutionally unavailable unless the Government made a good-faith, objectively reasonable effort to secure the witness's presence, and the Government bears that burden. *Barber v. Page*, 390 U.S. 719, 724–25 (1968); *United States v. Tirado-Tirado*, 563 F.3d 117, 123 (5th Cir. 2009). Having deposed its only two occurrence witnesses, released them, and returned them to Mexico, ROA. 106, 2186, the Government was required to take the affirmative steps reasonably neces-

31

sary to secure their return. *See Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 418–19 (5th Cir. 1992). It did not. Whether the Government acted reasonably depends on the totality of the circumstances, but the Constitution requires substantially more than a merely perfunctory effort. *See Tirado-Tirado*, 563 F.3d at 123; *Aguilar-Ayala*, 973 F.2d at 418. Measured against that standard, the district court erred in treating the Government's efforts as comparable to those in *United States v. Gaspar-Felipe*. That case turned on a critical fact absent here: the Government assured the witnesses that it would pay their "travel, lodging, or other expenses." 4 F.4th 330, 337–38 (5th Cir. 2021). Here, by contrast, the Government told Ibarra-Otero only that he would be reimbursed for travel and receipted lodging and meal expenses, ROA. 1532. while Sanchez-Martinez was merely referred to a coordinator to "assist [with his] travel arrangements." ROA. 1619. Those assurances were especially inadequate for Sanchez-Martinez, who promised under oath to return. ROA. 771. But explained that he had sold his car to travel to the United States and "didn't have enough for the expenses." ROA. 1546 (Sanchez-Martinez Dep.). Having removed a willing but indigent witness, the Government neither arranged nor funded his return, despite knowing he lacked the means to come back on his own.

Under the totality of the circumstances, the Government failed to establish the good-faith, objectively reasonable effort the Sixth Amendment requires before replacing the only occurrence witnesses with videotaped testimony. In any event, the

32

Court need not resolve that question. Even assuming the witnesses were constitutionally unavailable, their depositions remained inadmissible because the Government sought conviction on a factual theory supporting the harboring element that the defense had no reason to explore during the Rule 15 examinations, depriving Appellants of the meaningful opportunity for confrontation that *Crawford* requires.

**D.     The Rule 15 depositions did not provide the meaningful opportunity for confrontation that the Sixth Amendment requires.**

The Fifth Circuit's unpublished decision in *United States v. Calderon-Lopez* illustrates why Appellants never received the meaningful opportunity for cross-examination that *Crawford* requires. There, the Government notified the defendants on the day of the first Rule 15 deposition that it intended to supersede the indictment to add hostage-taking charges. *See United States v. Calderon-Lopez*, 268 F. Appx. 279, 289–90 (5th Cir. 2008) (per curiam) (unpublished). The witnesses then remained in the United States for more than a month after the superseding indictment was filed, giving the defendants an opportunity to request additional depositions directed to the new theory. *Id.* at 290. Because the defense had notice while confrontation remained possible, the court held that the prior opportunity for cross-examination satisfied the Sixth Amendment. *Id.*

This case presents the opposite chronology. At the time of the Rule 15 depositions, the Government's factual theory for satisfying the harboring element rested on the indictment's allegations that Appellants had "conceal[ed], harbor[ed]

and shield[ed] from detection" the witnesses, and defense counsel examined the witnesses accordingly. ROA. 18, 1489–92, 1569–72. Only after the depositions were complete and the witnesses had been removed did the Government abandon concealment and shielding as the factual basis on which it sought to prove harboring and argue instead that employment itself supplied the "something else" that transformed open housing into harboring. ROA. 1362. By then, Appellants could neither request another deposition nor recall the only occurrence witnesses.

The constitutional difference is one of timing. In *Calderon-Lopez*, the defense received notice while confrontation remained possible. Here, the Government changed the factual basis on which it sought to satisfy the harboring element only after confrontation had become impossible. The Sixth Amendment does not permit the Government to obtain a conviction on a factual theory that the defense never had a meaningful opportunity to confront. *See id*. at 289–290.

**E. The Confrontation Clause violation was not harmless.**

Because Appellants were denied the meaningful opportunity for cross-examination the Confrontation Clause requires, admission of the videotaped depositions violated the Sixth Amendment. The remaining question is whether the Government can prove the error harmless beyond a reasonable doubt. It cannot.

A preserved Confrontation Clause violation requires reversal unless the Government proves "beyond a reasonable doubt that the error complained of did not

contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see also United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008); *United States v. Tirado-Tirado*, 563 F.3d 117, 126 (5th Cir. 2009).

The Government cannot satisfy that burden. Sanchez-Martinez and Ibarra-Otero were the only occurrence witnesses. Their Rule 15 depositions supplied the only firsthand testimony concerning the housing, employment, and living arrangements the Government alleged constituted harboring. The Government presented both depositions in full, relied on them to prove the substantive harboring counts and the conspiracy count, and repeatedly urged the jury to credit that testimony during the closing argument. The depositions supplied the only firsthand evidence of the conduct the Government contended constituted harboring.

Nor is the question whether sufficient evidence might remain after excluding the unconstitutional testimony. The question is whether the Government has shown beyond a reasonable doubt that the error "did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24. Where the Government's proof depended on the testimony of the only occurrence witnesses and repeatedly relied on that testimony to establish the charged offenses, that burden cannot be met. *See Tirado-Tirado*, 563 F.3d at 126.

Accordingly, the Government has not carried its burden of proving the Confrontation Clause violation harmless beyond a reasonable doubt. Appellants' convic-

tions on Counts One, Two, and Three should be vacated, and the case remanded for a new trial.

## CONCLUSION

For the foregoing reasons, the Court should reverse Appellants' convictions. Because the evidence was legally insufficient under 8 U.S.C. § 1324(a)(1)(A)(iii), the Court should reverse and render judgments of acquittal on all counts. Alternatively, because admission of the Rule 15 depositions violated the Confrontation Clause, the Court should vacate the convictions and remand for a new trial.

By: /s/ Cesar de Leon
CESAR DE LEON
Texas State Bar No. 24073774
Federal ID S.D.T.X No. 2202339
Email: cesar@cesardeleonlaw.com

By: /s/ Jaime Diez
Jaime Diez
Texas State Bar No. 00783966
Southern District of Texas 23118

ATTORNEYS FOR APPELLANTS

36

## CERTIFICATE OF SERVICE

I certify that on July 1, 2026, I electronically filed the foregoing Brief of Appellants with the Clerk of the Court using the CM/ECF system, which will serve a copy on counsel of record for the United States, Honorable Carmen Castillo Mitchell, Assistant U.S. Attorney at carmen.mitchell@usdoj.gov and usatxs.appellate@usdoj.gov

/s/ Cesar de Leon
Cesar de Leon

## CERTIFICATE OF COMPLIANCE

1. Under Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the type volume limitation of Rule 32(a)(7)(B) because it contains 8,043 words, excluding the parts exempted by Rule 32(f).

2. This brief complies with the typeface and type style requirements of Rule 32(a)(5) and (6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/ Cesar de Leon
Cesar de Leon