**No. 26-40063**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*;

v.

NORA ALICIA AVILA-GUEL; LEONARDO BAEZ-LARA,

*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the Southern District of Texas, Brownsville Division
No. 1:25-CR-138

---

REPLY BRIEF OF APPELLANTS
NORA ALICIA AVILA-GUEL AND LEONARDO BAEZ-LARA

---

Cesar de Leon
622 East St. Charles
Brownsville, Texas 78520
Telephone: (956) 551-1327
Texas State Bar No. 24073774

Jaime M. Diez
P.O. Box 3070
Brownsville, Texas 78523
Telephone: (956) 544-3565
Texas State Bar No. 00783966

Counsel for Defendants-Appellants

# CERTIFICATE OF INTERESTED PERSONS

No. 26-40063

United States of America v. Nora Alicia Avila-Guel; Leonardo Baez-Lara

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. The Honorable Fernando Rodriguez, Jr., United States District Judge.
2. The Honorable Ignacio Torteya III, United States Magistrate Judge.
3. Leonardo Baez-Lara, Defendant-Appellant.
4. Nora Alicia Avila-Guel, Defendant-Appellant.
5. United States of America, Plaintiff-Appellee.
6. Counsel for Plaintiff-Appellee: Aaron F. Reitz, United States Attorney; Carmen Castillo Mitchell, Chief, Appellate Division, and Jason B. Smith, Assistant United States Attorney (on Appeal); Nicholas J. Ganjei, United States Attorney (in District Court); Paul Marius Marian and Baltazar Salazar, Assistant United States Attorneys (in District Court).
7. Counsel for Defendant-Appellant Avila-Guel: Cesar de Leon and Jaime Diez (in District Court and on Appeal).
8. Counsel for Defendant-Appellant Baez-Lara: Sergio Luis Villarreal (in District Court), Cesar de Leon, and Jaime Diez (on Appeal).

/s/ Cesar de Leon
Cesar de Leon
Counsel of Record for Appellants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................4

INTRODUCTION ....................................................................7

REPLY ARGUMENT ....................................................................8

I. The convictions rest on shelter plus employment, which is not harboring under this Court's construction of § 1324(a)(1)(A)(iii). ....................................................................8

A. The statutory question is preserved, and review is *de novo*. ................8

B. The Government's own authorities require that something be hidden from detection. ....................................................................11

C. The statute's text, structure, and penalties confirm this reading. .......15

D. *De Jesus-Batres*, *Shum*, and *Toure* do not hold that shelter plus employment is harboring. ....................................................................17

E. The Government's alternative concealment theory was not presented to the jury, and the deficiency remains one of proof. ......................................20

F. Even viewing the evidence in the Government's favor, the alternative concealment theory fails. ....................................................................20

G. The evidence is insufficient on every count, and the remedy is acquittal. ....................................................................24

II. The admission of the depositions violated the Confrontation Clause, and the Government cannot show the error was harmless. ............................................26

A. The Government's harmlessness argument fails under any formulation of the *Chapman* standard. ....................................................................26

B. The witnesses were not constitutionally unavailable. .........................29

CONCLUSION ....................................................................33

CERTIFICATE OF SERVICE ....................................................................35

CERTIFICATE OF COMPLIANCE ....................................................................35

## TABLE OF AUTHORITIES

Cases

*Barber v. Page*, 390 U.S. 719 (1968) ....................30

*Burks v. United States*, 437 U.S. 1 (1978) ....................25

*Chapman v. California*, 386 U.S. 18 (1967).................... 26, 29

*Crawford v. Washington*, 541 U.S. 36 (2004) ....................30

*Cruz v. Abbott*, 849 F.3d 594 (5th Cir. 2017) .................... 14, 15

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986)....................26

*Fischer v. United States*, 603 U.S. 480 (2024) .................... 15, 17

*Lowery v. Collins*, 988 F.2d 1364 (5th Cir. 1993)....................27

*Musacchio v. United States*, 577 U.S. 237 (2016)....................10

*Ohio v. Roberts*, 448 U.S. 56 (1980), *overruled on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004) .................... 30, 33

*United States v. Allie*, 978 F.2d 1401 (5th Cir. 1992) .................... 30, 32, 33

*United States v. Allison*, 616 F.2d 779 (5th Cir. 1980) (per curiam)....................10

*United States v. Alvarado-Valdez*, 521 F.3d 337 (5th Cir. 2008).................... 26, 27

*United States v. Anderton*, 901 F.3d 278 (5th Cir. 2018) ....................14

*United States v. Balderas*, 91 F. App'x 354, 2004 WL 605233 (5th Cir. Mar. 26, 2004) (per curiam) ....................19

*United States v. Brown*, 727 F.3d 329 (5th Cir. 2013) ....................9

*United States v. Cantu*, 557 F.2d 1173 (5th Cir. 1977) .................... 11, 12, 13

*United States v. De Jesus-Batres*, 410 F.3d 154 (5th Cir. 2005).................... 11, 17

*United States v. Demmitt*, 706 F.3d 665 (5th Cir. 2013) ....................28

*United States v. Duron-Caldera*, 737 F.3d 988 (5th Cir. 2013) .................... 26, 27, 28

*United States v. Fafalios*, 817 F.3d 155 (5th Cir. 2016)........................................25

*United States v. Foreman*, 84 F.4th 615 (5th Cir. 2023) ................................. 27, 29

*United States v. Foster*, 753 F. App'x 307 (5th Cir. 2018) (per curiam) ................31

*United States v. Ganji*, 880 F.3d 760 (5th Cir. 2018)..................................... 21, 24

*United States v. Gaspar-Felipe*, 4 F.4th 330 (5th Cir. 2021) .......................... 31, 32

*United States v. Guadian-Salazar*, 824 F.2d 344 (5th Cir. 1987) (per curiam) ......32

*United States v. Hamann*, 33 F.4th 759 (5th Cir. 2022) .................................. 27, 28

*United States v. Jones*, 930 F.3d 366 (5th Cir. 2019)..................................... 26, 27

*United States v. Kieffer*, 991 F.3d 630 (5th Cir. 2021)............................................9

*United States v. Kim*, 193 F.3d 567 (2d Cir. 1999) ................................................16

*United States v. Mandujano*, 499 F.2d 370 (5th Cir. 1974) ...................................24

*United States v. Martinez-Medina*, No. 08-30150, 2009 WL 117611 (5th Cir. Jan. 16, 2009) (per curiam)...........................................................................19

*United States v. McCall*, 553 F.3d 821 (5th Cir. 2008)......................................9, 25

*United States v. Pettigrew*, 77 F.3d 1500 (5th Cir. 1996) .....................................21

*United States v. Richardson*, 713 F.3d 232 (5th Cir. 2013) ...................................11

*United States v. Rubio-Gonzalez*, 674 F.2d 1067 (5th Cir. 1982)................... 11, 12

*United States v. Shum*, 496 F.3d 390 (5th Cir. 2007)................................ 17, 18, 22

*United States v. Staggers*, 961 F.3d 745 (5th Cir. 2020).......................................10

*United States v. Tirado-Tirado*, 563 F.3d 117 (5th Cir. 2009).................. 27, 30, 33

*United States v. Toure*, 965 F.3d 393 (5th Cir. 2020) ............................... 17, 18, 19

*United States v. Vargas-Ocampo*, 747 F.3d 299 (5th Cir. 2014) (en banc) ...........21

*United States v. Varkonyi*, 645 F.2d 453 (5th Cir. Unit A May 1981)........... passim

*United States v. Watkins*, 741 F.2d 692 (5th Cir. 1984) ........................................26

*United States v. Williams*, 553 U.S. 285 (2008) ....................................................15

*Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524 (5th Cir. 2013) (en banc) (plurality opinion) ...................................................... 14, 15

<u>Statutes</u>

8 U.S.C. § 1324 ..................................................................................................16

8 U.S.C. § 1324(a) (1982)......................................................................................16

8 U.S.C. § 1324(a)(1)(A)(iii) ............................................................................ passim

8 U.S.C. § 1324(a)(1)(B) .......................................................................................17

8 U.S.C. § 1324a ....................................................................................... 16, 17, 23, 24

Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 ..........................................................................................................16

<u>Rules</u>

5th Cir. R. 47.5.4 ........................................................................................... 19, 31

Fed. R. Crim. P. 29................................................................................................9, 10

Fed. R. Crim. P. 30....................................................................................................9

## INTRODUCTION

The difference between unlawful employment and felony harboring cannot be merely a place to sleep. Yet the Government told the jury that "[e]mployment" supplied the "something else" that transformed shelter into harboring and that the workers did not "have to be hidden or concealed." ROA.1362. This appeal asks whether openly employing and housing workers known to be unauthorized, without conduct directed at avoiding detection, constitutes harboring under 8 U.S.C. § 1324(a)(1)(A)(iii).

The Government deliberately elected to proceed on "[o]nly harboring," excluding concealment and shielding from detection. ROA.190, 776. The district court accepted the Government's reading, ruling that "from detection" modifies only "shield." ROA.789, 834. The jury was told that shelter alone was insufficient, but was not required to find conduct directed at avoiding detection. ROA.500–01, 1328.

*Varkonyi* draws a different line. The words "harbor, shield, or conceal" carry "the connotation that something is being hidden from detection." *United States v. Varkonyi*, 645 F.2d 453, 456 (5th Cir. Unit A May 1981). *Varkonyi* involved employment and lodging, but also instructions on avoiding detection and forcible interference with immigration agents to protect the workers from apprehension. *Id.* at 459. Here, Baez-Lara invited the agents into the bakery, disclosed the workers' living quarters, and walked the agents there. ROA.1161, 1185. The workers also

moved about in public view. ROA.1139–41, 1229, 1254. Nothing comparable to the detection-avoidance conduct supporting the conviction in *Varkonyi* appears here.

The depositions provide an independent ground for a new trial. After learning that one witness would not return and the other had stopped responding, the Government did not adjust its efforts to secure their presence. ROA.446, 451. It therefore failed to establish constitutional unavailability. The error was not harmless: the prosecutor used the recorded testimony to portray the men as dependent on Appellants, ROA.1363, and to prove the alleged agreement to harbor, ROA.1338–39. Given the testimony's importance to those disputed issues, the Government cannot show beyond a reasonable doubt that admitting the depositions did not contribute to the verdicts.

The Court should reverse and remand with instructions to enter judgments of acquittal on all counts. Alternatively, it should vacate the convictions and remand for a new trial.

## REPLY ARGUMENT

### I. The convictions rest on shelter plus employment, which is not harboring under this Court's construction of § 1324(a)(1)(A)(iii).

#### A. The statutory question is preserved, and review is *de novo*.

The Government agrees that review is *de novo*, Gov. Br. 28, and acknowledges that Appellants moved for acquittal on the ground that the evidence

was insufficient "on any count." Gov. Br. 22. The record shows preservation at three stages.

First, the definition of harboring. Before trial, Appellants asked the court to rule that harboring "requires conduct involving concealment or shielding from detection" and to bar a theory "based solely on the provision of housing or employment." ROA.359.

The court rejected that construction but confirmed preservation. ROA.788–89, 792. Appellants renewed their objection under Rule 30, ROA.473–77, 836–37; their agreement with the rest of the charge did not withdraw it.

Second, sufficiency on the substantive counts. After the Government rested, Avila-Guel's counsel moved for acquittal; the court asked, "As to all counts?" and counsel answered, "Yes, Your Honor." ROA.1276. Baez-Lara joined. ROA.1277. The court denied the motion on Counts Two and Three, ROA.1279, and the defense then rested without presenting evidence. ROA.1295. Because no defense evidence followed the Rule 29 motion, no renewal was necessary to preserve the sufficiency challenge. *See United States v. Kieffer*, 991 F.3d 630, 634 & n.1 (5th Cir. 2021).

"Rule 29 motions need not be specific," *United States v. McCall*, 553 F.3d 821, 830 (5th Cir. 2008), and "a general challenge to the sufficiency of the evidence preserves *de novo* review as to all potential sufficiency issues." *United States v. Brown*, 727 F.3d 329, 335 (5th Cir. 2013). Appellants then sharpened that challenge

in their timely post-verdict Rule 29(c) motions, arguing that harboring requires "some level of covertness" and specifically challenging the second, third, and fourth elements of Counts Two and Three. ROA.518–19, 522–24; *see* ROA.539, 549. The timely Rule 29(c) motions independently preserved the sufficiency challenge. *See United States v. Allison*, 616 F.2d 779, 784 (5th Cir. 1980) (per curiam).

Third, Count One. The oral motion argued that there was "no evidence of [an] agreement . . . to commit a crime to conceal, harbor or shield from detection." ROA.1276. The court denied it, ROA.1313, and the written motion renewed it. ROA.515–18.

The Government's observation that Appellants "do not appeal the district court's jury instructions," Gov. Br. 12–13 n.5, is beside the point. A sufficiency challenge asks whether the evidence proved the offense Congress enacted, not whether the jury was correctly instructed on that offense. Sufficiency review therefore "does not rest on how the jury was instructed." *Musacchio v. United States*, 577 U.S. 237, 243 (2016). Even where an unobjected-to instruction omits an element, this Court reviews the instructional error for plain error but measures sufficiency "against the actual elements of the offense, not the elements stated in the jury instructions." *United States v. Staggers*, 961 F.3d 745, 754, 756 (5th Cir. 2020).

The Government likewise cannot recast Appellants' argument as one "more properly addressed" through an instructional challenge. Gov. Br. 26. Whether the

conduct proved at trial falls within a statutory element is a question of statutory construction reviewed *de novo*. *See United States v. Richardson*, 713 F.3d 232, 234–35 & n.3 (5th Cir. 2013) (treating whether the defendant's conduct constituted statutory "distribution" as a question of statutory construction). Appellants' argument is therefore exactly what they say it is: the Government failed to prove conduct constituting harboring under § 1324(a)(1)(A)(iii).

**B. The Government's own authorities require that something be hidden from detection**.

Under the formulation on which the Government relies, the second element requires proof of the prohibited act, that the defendant "concealed, harbored or sheltered" the alien, while the fourth element requires proof that the defendant's conduct "tended to substantially facilitate the alien remaining in the United States illegally." *United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005); Gov. Br. 29–30. The Government elected to proceed on harboring alone. ROA.190, 776.

Appellants do not dispute that "conceal," "harbor," and "shield from detection" identify distinct ways of violating the statute. Gov. Br. 30–31. But neither *Rubio-Gonzalez* nor *Cantu* holds that the distinction lets harboring reach conduct bearing no relationship to concealment or detection.

*Rubio-Gonzalez* construed "harbor," "conceal," and "shield from detection" as alternative means of committing a single offense, while recognizing that the terms are not synonymous. *See United States v. Rubio-Gonzalez*, 674 F.2d 1067, 1073–74

& n.5 (5th Cir. 1982). The Court explained that Congress intended to reach conduct "fairly within any of these terms" that substantially facilitates an alien's unlawful presence, but expressly reserved whether facilitating conduct might nevertheless fall outside "a fair reading of the words." *Id*. at 1074 n.5. Its observation that "harbor" is "perhaps a somewhat broader concept," Gov. Br. 31, arose in explaining why the former employment proviso applied only to harboring. *Rubio-Gonzalez,* 674 F.2d at 1074 n.5. Appellants do not dispute that harboring may be broader than concealment.

But *Rubio-Gonzalez* itself involved conduct directed at avoiding detection: the defendant warned undocumented workers that immigration officers were present, and the workers "ran away, seeking to escape detection by the INS." *Id*. at 1072. The Court did not decide whether that conduct constituted harboring because the evidence independently established attempted shielding from detection. *Id*. at 1072–73. And although the Court upheld an instruction defining harboring in terms of substantial facilitation, "the only matter presented" to the jury was the defendant's warning. *Id*. at 1073. The instruction was therefore sustained in a case involving affirmative detection-avoidance conduct, not employment and lodging alone.

*Cantu* likewise involved affirmative efforts to prevent apprehension. When immigration agents came to question his restaurant employees, Cantu "refused to admit the agents without a search warrant." *United States v. Cantu*, 557 F.2d 1173, 1175 (5th Cir. 1977). While the agents waited, Cantu arranged for patrons to drive

two employees away, including one who had changed out of his uniform and attempted to hide. *Id*. at 1175–76. Baez-Lara did the opposite: he invited the agents inside, ROA.1161; volunteered the location of the workers' living quarters and walked the agents there, ROA.1185; and consented to the agents' going to his home. ROA.1188.

*Varkonyi* construed the verbs themselves: "Implicit in the wording 'harbor, shield, or conceal', is the connotation that something is being hidden from detection . . . ." 645 F.2d at 456. It then rejected *Varkonyi*'s argument that he "never shielded the aliens from detection," *id*. at 459, because

> [t]he evidence adduced at trial revealed that Varkonyi knew of the aliens undocumented status; that he had instructed the aliens on avoiding detection on a prior occasion; that he was providing the aliens with employment and lodging while they were unlawfully in the United States; that he had forcibly interfered with INS agents to protect the aliens from apprehension; and, that he was partly responsible for the subsequent escape of one alien in INS custody. As a result of the aforementioned acts, we find that there was sufficient evidence for the jury to determine that the defendant's conduct went beyond mere employment, and thus, constituted harboring.

*Id*.

Employment and lodging appeared among the circumstances in *Varkonyi*, as they do here. But the additional conduct that supported the conviction there, and that is absent here, was directed at avoiding detection or apprehension. Neither of the two material witnesses testified that either Appellant instructed him how to avoid

immigration officers, provided false documents, or otherwise took steps to prevent apprehension. ROA.1491, 1570. Nor did any agent identify such conduct or testify that either Appellant interfered with the investigation. ROA.1139–41, 1175, 1186, 1188–90.

The Government is correct that *Varkonyi*'s reference to "employment per se" arose against the backdrop of the former employment proviso. Gov. Br. 31 n.10; 645 F.2d at 459–60. But that does not dispose of *Varkonyi*'s separate construction of the operative verbs or the conduct on which the Court relied in sustaining the conviction. The Court construed "harbor, shield, or conceal" to carry the connotation of hiding from detection and then identified conduct directed at avoiding apprehension in addition to employment and lodging. *Id.* at 456, 459. And this Court has continued to describe *Varkonyi* after repeal as holding that harboring does not include "mere employment." *See United States v. Anderton*, 901 F.3d 278, 283–84 (5th Cir. 2018).

After the repeal, the lead opinion in the en banc *Villas at Parkside Partners* decision restated that "we have interpreted the statutory phrase 'harbor, shield, or conceal' to imply that 'something is being hidden from detection.'" *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 529 (5th Cir. 2013) (en banc) (plurality opinion).

*Cruz v. Abbott* applied the same construction to a Texas statute modeled on § 1324(a)(1)(A)(iii), concluding: "Although the definition of 'harbor' may be

ambiguous in isolation, when paired with 'from detection' it requires some level of covertness well beyond merely renting or providing a place to live." 849 F.3d 594, 599 (5th Cir. 2017) (footnote omitted). It acknowledged that the placement of "from detection" in the federal statute "suggests it may not be modifying 'harbor,'" the point on which the district court relied, but concluded: "Nevertheless, we read the federal statute as a prohibition on hiding aliens from authorities rather than as a prohibition against housing them." *Id*. at 600 n.11. *Cruz* decided standing, not the merits, *id*. at 598 n.4; its reading of the federal statute nevertheless confirms *Varkonyi*.

The Government dismisses *Villas* and *Cruz* as "civil cases," Gov. Br. 31 n.10, a setting the opening brief acknowledged. Appellants' Br. 11–12 (internal pagination used throughout). The label does not change what the words mean or the analysis.

**C. The statute's text, structure, and penalties confirm this reading.**

The opening brief showed that "harbor" takes its meaning from the words around it. Appellants' Br. 16–18. A word is "given more precise content by the neighboring words with which it is associated." *Fischer v. United States*, 603 U.S. 480, 487 (2024) (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008)). If "harbor" reaches every instance of shelter that makes an alien's presence easier, the distinct verbs "conceal" and "shield from detection" risk having "no work to do." *Cf*. *id*. at 490.

Structure points the same way. Before 1986, § 1324 expressly provided that employment "shall not be deemed to constitute harboring." *United States v. Kim*, 193 F.3d 567, 573 (2d Cir. 1999) (emphasis omitted) (quoting 8 U.S.C. § 1324(a) (1982)). Congress removed that proviso when it amended § 1324(a) in 1986. Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 112(a), 100 Stat. 3359, 3381–82. In the same Act, Congress created a separate employer-sanctions scheme making it unlawful knowingly to hire, or to continue to employ, an unauthorized alien. *Id.* § 101(a)(1), 100 Stat. at 3360, 3368; 8 U.S.C. § 1324a(a)(1)(A), (a)(2). Under that scheme, criminal imprisonment for those employment violations applies only to a "pattern or practice" and is limited to "not more than six months for the entire pattern or practice." 8 U.S.C. § 1324a(f)(1).

Removing the former proviso eliminated the categorical rule that employment could not constitute harboring; it did not make employment itself harboring or dispense with proof that the defendant's conduct satisfied § 1324(a)(1)(A)(iii). Appellants do not contend that § 1324a displaces § 1324 or prevents prosecution when the conduct violates both statutes. *Kim* expressly rejected that argument. 193 F.3d at 573–74. But *Kim* separately examined whether the evidence established harboring and upheld the conviction because the defendant instructed the worker to use false names and documents to mislead immigration authorities about his continued employment. *Id.* at 574–75.

The penalty structure reinforces that distinction. Congress limited imprisonment for a pattern or practice of unauthorized employment to six months. 8 U.S.C. § 1324a(f)(1). Harboring carries a maximum of five years, increased to ten when, as the jury found here, the offense is committed for commercial advantage or private financial gain. 8 U.S.C. § 1324(a)(1)(B)(i)–(ii); ROA.1371. Those different penalties do not make the statutes mutually exclusive. They support construing "harbor" according to its text and this Court's precedent, rather than treating the addition of lodging as sufficient to transform knowing unlawful employment into felony harboring. *Cf. Fischer*, 603 U.S. at 494.

### D. *De Jesus-Batres*, *Shum*, and *Toure* do not hold that shelter plus employment is harboring.

The Government's reliance on *De Jesus-Batres* does not answer what "harbor" means. That case supplies the familiar four-element formulation, under which the second element requires proof that the defendant "concealed, harbored or sheltered" the alien and the fourth separately requires proof that the defendant's conduct "tended to substantially facilitate the alien remaining in the United States illegally." *United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005); Gov. Br. 29–30. But reciting the elements does not define the prohibited act of harboring or permit the fourth element to do the work of the second. *De Jesus-Batres* did not hold that conduct satisfying the substantial-facilitation element necessarily constitutes harboring. The Government must prove both: conduct that constitutes

harboring and that the conduct tended to substantially facilitate the alien's unlawful presence.

*United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007), the source of the district court's "easier or less difficult" instruction, ROA.777, 834, illustrates the distinction missing here. *Shum* involved a challenge to the fourth element only, and the employer there provided false identifications and "took steps that would shield their identities from detection by the government." 496 F.3d at 392. *Shum* thus addressed facilitation on facts that independently showed conduct directed at detection.

*United States v. Toure*, 965 F.3d 393, 403 (5th Cir. 2020), does not resolve the question presented here. *Toure* upheld the pattern instruction and the refusal to add proposed language concerning an intent to prevent detection, emphasizing that the defendants "were still free to make this argument during closing." *Id*. Here, Appellants could point to the absence of hiding as a factual circumstance, but they could not argue its legal significance in the same way. The court's order in limine prohibited counsel from suggesting that concealment or shielding was "a required element," ROA.484, and the court further instructed that Appellants could not argue that "unless the government proves some form of concealment or hiding" the jury must acquit. ROA.835–36*; see also* ROA.855.

At the same time, the court recognized that shelter alone was insufficient and that "[t]here's a plus factor," while explaining that what qualified as that factor was "not as well established in the law" and "could be employment." ROA.834–35. The Government then supplied that answer in rebuttal: "What is the something else here? Employment. That's what makes it harboring." ROA.1362. It immediately added that the workers did not "have to be hidden or concealed." ROA.1362. Thus, unlike *Toure*, this case squarely presents whether employment and lodging, without conduct directed at avoiding detection, satisfy the statutory act of harboring.

Appellants do not challenge the pattern instruction or ask this Court to add a specific-intent element. Their sufficiency challenge asks whether the conduct proved constitutes "harboring" under § 1324(a)(1)(A)(iii) and *Varkonyi*. *Toure* did not decide that question. The Government cites no decision of this Court, and Appellants have found none, affirming a harboring conviction where the defendant openly housed and employed a known unauthorized worker without taking action directed at keeping the worker from detection or apprehension.[1]

[1] Two unpublished decisions the Government does not cite contain language favoring its reading. *United States v. Balderas*, 91 F. App'x 354, 354–55, 2004 WL 605233, at *1 (5th Cir. Mar. 26, 2004) (per curiam), stated that "providing shelter to illegal aliens constitutes harboring," but reviewed only for a "manifest miscarriage of justice," and the evidence included a red light that "could function as a signal to aliens." *United States v. Martinez-Medina*, No. 08-30150, 2009 WL 117611, at *1 (5th Cir. Jan. 16, 2009) (per curiam), rejected the argument that harboring requires proof that the defendant "actively hid aliens from detection." But the evidence there included jobs, transportation, housing, utilities, cash wages, failure to pay taxes or complete I-9 forms, and instructions not to run when Border Patrol vehicles passed, which the Court described

**E. The Government's alternative concealment theory was not presented to the jury, and the deficiency remains one of proof.**

The Government argues in the alternative that, if harboring requires concealment or comparable covert conduct, a rational juror could infer such conduct from the papered windows, the commercial suite, the meals, the missing I-9 forms, and the cash wages. Gov. Br. 32–37. That was not the legal theory presented to the jury. The district court permitted Appellants to rely on the absence of hiding or concealment as evidence that the Government had proved, at most, mere sheltering, but prohibited them from arguing that "unless the government proves some form of concealment or hiding" the jury must acquit. ROA.835–36; see also ROA.855. The written order likewise barred counsel from suggesting that concealment or shielding was "a required element" of the offense. ROA.484–86. When defense counsel emphasized the absence of hiding, ROA.1352–56, the prosecutor responded that concealment was "not a requirement" and that the men did not "have to be hidden or concealed." ROA.1362.

**F. Even viewing the evidence in the Government's favor, the alternative concealment theory fails.**

Once the statutory meaning of "harbor" is fixed, the question is whether the evidence, with all reasonable inferences drawn in the Government's favor, permits

as "advice intended to enable them to avoid detection." This record contains no comparable instruction. Neither decision is precedential here. *See* 5th Cir. R. 47.5.4.

a rational jury to find conduct satisfying that element. Deference does not enlarge the statutory definition. Inferences must be "rational, as opposed to being speculative or insupportable," *United States v. Vargas-Ocampo*, 747 F.3d 299, 302 (5th Cir. 2014) (en banc), and "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Ganji*, 880 F.3d 760, 767 (5th Cir. 2018) (quoting *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996)).

The paper**.** The photographs show that the door and windows of Suite 5 were covered, Gov. Br. 33, but not who chose the coverings or why. The only testimony on that point came from Ibarra-Otero, who said the workers put up the paper "[j]ust as decoration," and that Appellants did not. ROA.1492; *see also* ROA.1571 (Sanchez-Martinez, asked about the window coverings: "before it used to be the bakery and the logos were there"). The jury could disbelieve that testimony, Gov. Br. 33 n.11, but disbelief does not establish that either Appellant chose, directed, or maintained the coverings to conceal the workers.

The premises. That the men slept in a commercial suite without a kitchen or hot water, Gov. Br. 34, may show rudimentary accommodations, not an effort to avoid immigration detection. The Government's surveillance showed men leaving Suite 5 and walking around the building to open the bakery's front door. ROA.1224,

1228. The bakery sat on Highway 100, open to the public, with signs out front. ROA.1126, 1228–29. Those facts show observable movement, not concealment.

The agents' observations**.** None of the agents identified an instruction, warning system, false identification, deceptive statement, or restriction on movement attributable to Appellants for the purpose of avoiding detection. ROA.1135, 1139, 1175, 1189–90, 1199, 1258. The testimony described the men's ordinary movements, not merely their conduct on the day of arrest. ROA.1229, 1248–49, 1254; *see* ROA.1485–90, 1569. Baez-Lara's statement that he "knew this day would come," ROA.1161, shows knowledge that he employed unauthorized workers, which Appellants do not dispute. Anticipating detection, however, is not taking steps to prevent it.

Cash and forms. The missing employment-verification forms and cash wages support knowing unlawful employment, and a juror could infer that those practices created fewer employment records. But fewer records do not, without more, establish harboring. Appellants do not contend that documentary concealment falls outside the statute. In *Shum*, the employer supplied false identification to facilitate government background checks, in addition to withholding Social Security paperwork. 496 F.3d at 392. The evidence there thus connected the employment practices to measures disguising the workers' identities from the Government.

Here, the Government relies on omitted verification forms and cash payments to workers who, according to its cited explanation, could not cash checks because they "didn't have any proper documentation." Gov. Br. 36 (quoting ROA.1163–64). That explains an accommodation to the workers' lack of documents; it does not establish an arrangement to conceal their unauthorized presence. Congress separately addressed failure to comply with employment-verification requirements in § 1324a. *See* 8 U.S.C. § 1324a(a)(1)(B), (b). That does not foreclose a harboring prosecution, but neither does it dispense with proof of harboring. Even considered with the remaining evidence and every reasonable inference favorable to the verdict, the cash payments and missing forms do not establish the connection to detection required by *Varkonyi*, 645 F.2d at 456.

Considered together, the evidence permits findings that Appellants knew the men were unauthorized, employed them, housed them, and thereby made their continued presence easier. Those findings establish knowledge and facilitation, not the separate act of harboring. Appellants do not ask the Court to reweigh credibility or prefer innocent explanations merely because they are possible. Even collectively, however, the Government's evidence does not identify conduct by either Appellant that transformed employment and housing into harboring. Holding otherwise would allow the substantial-facilitation element to supply the prohibited act itself and make

harboring indistinguishable from the unlawful employment Congress separately addressed in § 1324a.

**G. The evidence is insufficient on every count, and the remedy is acquittal.**

Even considering the depositions, the evidence is insufficient on every count under the statute as this Court has construed it.

Attempt. Counts Two and Three permitted conviction if Appellants "harbored or attempted to harbor" the men. ROA.500. An attempt requires "the kind of culpability otherwise required for the commission of the crime" and a "substantial step" that is "strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir. 1974).

After reciting the second element, including its attempt alternative, the prosecutor explained that "here they were given shelter and employment." ROA.1340. The Government identified no separate conduct strongly corroborating an intent to commit harboring as the statute is properly construed.

Count One. The conspiracy count fails for a separate reason. The Government had to prove an agreement whose object was harboring. ROA.498–99. An agreement need not be formal and may be inferred from concerted action, but it may not be lightly inferred, and association or similarity of conduct does not establish it. *Ganji*, 880 F.3d at 767–68. Joint ownership, shared hiring authority, knowledge of the men's status, and the living arrangements show concerted action in operating a

bakery that employed and housed the men. They do not show that either Appellant agreed with anyone to harbor them, as this Court has construed that term. The district court found "some weight" in that argument and took the count under advisement. ROA.1277, 1279–80. The Government's answer, then and in closing, was that both Appellants knew the men's status, owned the property, gave baking instructions, and "knew this day would come." ROA.1277–79, 1338–39. That is evidence of a shared business, not of an agreement to harbor. Whether the other party was the codefendant or one of the men, as the court's answer to the jury permitted, ROA.1368, an agreement to employ and house workers openly is not an agreement to harbor them.

The evidence also differs by defendant and count. Ibarra-Otero's deposition supplied testimony that Avila-Guel sometimes directed his work when Baez-Lara was absent, ROA.1474–75; Sanchez-Martinez testified that he never saw her working at the bakery. ROA.1556.

Because the evidence is insufficient under the statute as this Court has construed it, "the only 'just' remedy" is "the direction of a judgment of acquittal." *Burks v. United States*, 437 U.S. 1, 18 (1978); *see United States v. Fafalios*, 817 F.3d 155, 162–63 (5th Cir. 2016); *McCall*, 553 F.3d at 834.

## II. The admission of the depositions violated the Confrontation Clause, and the Government cannot show the error was harmless.

### A. The Government's harmlessness argument fails under any formulation of the *Chapman* standard.

A Confrontation Clause error requires a new trial unless the Government proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967); *accord United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008). The considerations include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *accord United States v. Duron-Caldera*, 737 F.3d 988, 996 (5th Cir. 2013).

The Government emphasizes *Watkins*'s statement that the remaining evidence must be "so overwhelming as to establish the guilt of the accused beyond a reasonable doubt." Gov. Br. 46 (quoting *United States v. Watkins*, 741 F.2d 692, 695 (5th Cir. 1984)). But *Watkins* first requires assessing the tainted evidence's effect "upon the other evidence adduced at trial and upon the conduct of the defense." *Id.* *Jones* makes the point explicit: the inquiry focuses "on the evidence that violated

[the defendant's] confrontation right, not the sufficiency of the evidence remaining after excision of the tainted evidence." *United States v. Jones*, 930 F.3d 366, 379 (5th Cir. 2019) (quoting *Lowery v. Collins*, 988 F.2d 1364, 1373 (5th Cir. 1993)); *accord United States v. Foreman*, 84 F.4th 615, 621–22 (5th Cir. 2023); *United States v. Hamann*, 33 F.4th 759, 771 (5th Cir. 2022).

Importance and use. The court instructed jurors to treat the video testimony as live testimony, ROA.1265; *see* ROA.987, and the jury received the transcripts for deliberations by agreement. ROA.905–06, 1265–66. In closing, the prosecutor relied on the depositions to argue that Sanchez-Martinez worked four months without a day off, needed Baez-Lara's permission to return to Mexico, and had nowhere else to sleep, and that after Ibarra-Otero's illegal reentry "Mr. Baez goes and picks him up and takes him right back to the bakery and right back to his living quarters." ROA.1342–43. In rebuttal, he used the same testimony to answer the defense: "Does that sound like mere shelter to you?" ROA.1363. The Government thus used the depositions to prove the central disputed point: that the arrangement was more than ordinary employment and lodging. This Court has repeatedly found harmful error under similar circumstances. *Jones*, 930 F.3d at 379; *see, e.g.*, *Duron-Caldera*, 737 F.3d at 997; *United States v. Tirado-Tirado*, 563 F.3d 117, 126 (5th Cir. 2009); *Alvarado-Valdez*, 521 F.3d at 342–43.

Cumulative evidence. For evidence to be cumulative here, "substantial evidence [must] support[ ] the same facts and inferences as those in the erroneously admitted evidence." *Duron-Caldera*, 737 F.3d at 997 (alteration in original) (quoting *United States v. Demmitt*, 706 F.3d 665, 673 (5th Cir. 2013)). The agents' summaries of the men's interviews overlapped with the depositions on housing, wages, meals, and status. ROA.1113–15, 1118, 1139, 1167–68, 1200–04. But no agent testified that Sanchez-Martinez never missed a day, planned to ask Baez-Lara's permission to go home, or had nowhere else to go, and none testified to the pickup. Those facts came only from the depositions. ROA.1467–68, 1569–72. And the agents' accounts were not independent corroboration; they were other versions of statements by the same two absent witnesses. *Cf. Duron-Caldera*, 737 F.3d at 997 (corroboration that "too, was not subject to cross-examination" did not make the error harmless). When the Government "relied on the subject of the challenged testimony to prove its case," that "is enough under our precedents, even if the government had other ways of establishing the same facts." *Hamann*, 33 F.4th at 772.

The remaining evidence. Even under the Government's broader construction of harboring, the depositions were not merely cumulative. Apart from the agents' accounts addressed above, the Government's remaining evidence consisted of Appellants' admissions concerning employment, housing, meals, cash wages, and missing employment verification forms, together with photographs and video of

Suite 5. Gov. Br. 46–47. That evidence corroborated aspects of the arrangement, but it did not supply the distinctive accounts the prosecutor used to establish its significance.

The question is therefore not merely whether the remaining evidence could support convictions under the Government's construction, but whether the Government has shown beyond a reasonable doubt that the depositions did not contribute to the verdicts. *Chapman*, 386 U.S. at 24.

The conspiracy count. Tainted evidence "may be harmful in the context of a related conspiracy charge, but only where the unconstitutional evidence speaks to a contested element of the conspiracy, or where the conspiracy and substantive offense cannot be distinguished." *Foreman*, 84 F.4th at 623. *Foreman* affirmed the conspiracy count because the offenses were distinguishable and the tainted form was not used to prove the agreement. *Id*. Here, the agreement was contested; the Government argued it from the depositions in closing, ROA.1338–39. The jury then asked whether the conspiracy was between the defendants or with "the illegals-two witnesses." ROA.1368.

**B. The witnesses were not constitutionally unavailable.**

The Government's inability to produce the witnesses does not establish unavailability. A witness is "unavailable" only if "the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S.

719, 724–25 (1968). That requirement "demands much more than a merely perfunctory effort," *Tirado-Tirado*, 563 F.3d at 123 (quoting *United States v. Allie*, 978 F.2d 1401, 1408 (5th Cir. 1992)), is objective, *id*. at 125 n.5, and places the burden on the Government. *Ohio v. Roberts*, 448 U.S. 56, 74–75 (1980), overruled on other grounds by *Crawford v. Washington*, 541 U.S. 36 (2004).

The obstacle was known from the start of the prosecution. At the men's initial appearance as material witnesses, the magistrate judge told them that the court had found that, because they were subject to deportation, "it would be impractical to secure your presence through subpoena," and that they would be released after their depositions "with the expectation that you will return for trial and that the Government will make arrangements to return you for trial." ROA.662, 665. The question is not how many subpoenas, letters, and calls the Government can count, but whether its efforts reasonably addressed that known obstacle.

The Government took real steps. It served subpoenas and bilingual letters promising reimbursement and naming a travel coordinator, ROA.1531–32, 1618–20; alerted the bridges, ROA.769–70, 883; asked a State Department contact for help locating the men, ROA.770; Gov. Br. 14 (quoting ROA.289); and called and messaged the numbers they had given. ROA.446, 451. But it did not change course when those steps stopped working.

Ibarra-Otero lived in Matamoros. ROA.1482. The Government asked him only whether he was willing to answer questions "at this time," and the district court, searching the pages the Government cited for an assurance of return, said, "I don't see it." ROA.771–72, 1463. He did tell defense counsel he would come back. ROA.1530. But on June 18 the agent was told that he "would not be returning to the U.S. to testify," and on June 27 it was "confirmed he does not intend to return." ROA.446. In *United States v. Foster*, 753 F. App'x 307, 312–13 (5th Cir. 2018) (per curiam), the Government had assured the witnesses of reentry and paid travel but did not verify their contact information, obtain collateral contacts, or attempt any contact for more than three months; the Court held those efforts insufficient to establish unavailability, rejected harmlessness, and vacated. *Id*. at 314–15. *Foster* is not precedential, *see* 5th Cir. R. 47.5.4, but its method applies: it weighed initial assurances alongside subsequent efforts and required no fixed checklist. *Id*. at 312–13. Nothing in the record shows that the Government asked why he would not return or tried to address the reason; its later calls sought only "to verify if he does or does not intend to return." ROA.446. *Gaspar-Felipe* does not hold that an express refusal to return renders further efforts futile. Neither witness there told the Government that he would not return; rather, the Government was unable to reestablish contact despite repeated calls. 4 F.4th at 338.

Sanchez-Martinez lived in Ciudad Victoria, three and a half to four hours from the border, and had sold his car to pay for the trip north. ROA.1546, 1573. On June 12 the agent was told that he would attempt to return; after that he did not respond. ROA.451. The Government described its arrangements as beginning at the bridge: "we have alerts at the bridge, at all the bridges, they would call the case agent and we would drive them here." ROA.883. Prepaid travel is not always required; *Allie* found an aggregate of measures sufficient that included checks issued to the witnesses upon reentry. 978 F.2d at 1403, 1407. But a promise of reimbursement does not itself provide the advance funds a witness may need to reach the port of entry from the interior of Mexico. In *Gaspar-Felipe*, which rejected without separate discussion a complaint about the failure to advance travel funds, the Government's letters had promised transportation "by means of a prepaid ticket." *United States v. Gaspar-Felipe*, 4 F.4th 330, 338 & n.4 (5th Cir. 2021). And in *Guadian-Salazar*, where witnesses were released without travel funds to homes "several hundred miles into the interior of Mexico" and no one contacted them before trial, this Court accepted the Government's concession of error and reversed. *United States v. Guadian-Salazar*, 824 F.2d 344, 346–47 (5th Cir. 1987) (per curiam).

The court ordered two more contact attempts and on July 10 found that the Government had complied. ROA.775, 870. That day, at Baez-Lara's unopposed request, trial was moved from July 14 to August 11. ROA.830–32. The call logs in

the record end on July 8, 2025, ROA.443, 446, 451, and neither the record nor the Government identifies any later attempt; *see* Gov. Br. 42 (citing ROA.299–300, 870), notwithstanding the postponement of trial until August 11. The added month gave the Government more time to act on what it knew, and *Tirado-Tirado* faulted the failure to remain in contact and make concrete arrangements "once the trial date had been set." 563 F.3d at 125.

The comparison with *Tirado-Tirado* turns on the reasonableness of the Government's efforts as circumstances developed, not on whether those efforts succeeded. 563 F.3d at 123–25; *Allie*, 978 F.2d at 1407. The Government here did more at the outset. But the subsequent refusal of one witness to return and the loss of contact with the other required consideration of whether further reasonable measures could secure their attendance. ROA.446, 451. The record does not show that the Government investigated the reason for the refusal or adapted its efforts to the loss of contact. Appellants challenge that response, not the mere fact that the witnesses failed to appear. *See Roberts*, 448 U.S. at 74–75.

## CONCLUSION

The Court should reverse the convictions and remand with instructions to enter judgments of acquittal on all counts. Alternatively, the Court should vacate the convictions and remand for a new trial.

Respectfully Submitted,

By: /s/ Cesar de Leon
CESAR DE LEON
Texas State Bar No. 24073774
Federal ID S.D.T.X No. 2202339
Email: cesar@cesardeleonlaw.com

By: /s/ Jaime Diez
Jaime Diez
Texas State Bar No. 00783966
Southern District of Texas 23118

ATTORNEYS FOR APPELLANTS

## CERTIFICATE OF SERVICE

I certify that on October 14, 2026, I electronically filed the foregoing Reply Brief of Appellants with the Clerk of the Court using the CM/ECF system, which will serve a copy on counsel of record for the United States, Jason B. Smith, Assistant United States Attorney, at jason.smith2@usdoj.gov and usatxs.appellate@usdoj.gov.

/s/ Cesar de Leon
Cesar de Leon

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Rule 32(f), it contains 6,296 words.

2. This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman.

3. The undersigned certifies that all required privacy redactions have been made in accordance with Fifth Circuit Rule 25.2.13.

4. The undersigned certifies that the electronic submission is an exact copy of any paper document submitted to the Court, in accordance with Fifth Circuit Rule 25.2.1.

5. The undersigned certifies that this document has been scanned for malware and viruses with the most recent version of Nord VPN scanning program and is free of viruses.

Dated: October 14, 2026

/s/ Cesar de Leon
Cesar de Leon

Attorney for Appellants